JOHN PERRINE, jun. v. PETER C. BERGEN.

Under the writ of possession the sheriff is not prevented from delivering the actual possession of land by its being covered with water ; without this the judgment in ejectment could not be executed.

This was an action on the case for overflowing a part of the plaintiff's land. A verdict had been given for the defendant, and the plaintiff had obtained a rule to show cause why the verdict should not be set aside and a new trial had. The substance of the testimony, and of the charge of the judge, who tried the cause, will be found in the opinions below, in which the Chief Justice concurred.

FORD, J. This was an action on the case for overflowing a part of the plaintiff's land with water by means of a dam that the defendant maintained across a stream of water below the plaintiff's lot. The declaration counted on the plaintiff's possession of a lot of 2.79 acres, and that the defendant caused 1.72 acre thereof to be overflowed. The defendant admitted the overflowing complained of, but denied that the plaintiff had title to the land, or any such possession that he could maintain an action for overflowing it.

The plaintiff gave in evidence a survey and location of the

two acres and seventy-nine hundredths in the year 1808, and deduced title under it to himself. Soon after the location, he brought an ejectment against one Valley Cousins, the tenant in possession, and having obtained judgment, and a writ of *habere facias possessionem*, the sheriff, as appeared by the record and return, put him in full possession, the 29th of October, 1810 ; from which time, by himself and tenants, the plaintiff continued his possession till the commencement of the present suit in September, 1829, making a period of nineteen years. Such was the possession he proved.

On the other hand it appeared that the defendant's dam occasioned water to stand on the low parts of the said lot, both before and at the time the sheriff delivered possession to the plaintiff, and has occasioned it to do the same ever since ; and in this way the defendant had possession as much as the plaintiff, during those nineteen years, as his counsel insisted

The court, in charging the jury, instructed them that an actual possession must be shown by the plaintiff to maintain this action, and as he had not made that out, the jury might reject his possession altogether. This direction, I conceive, was erroneous ; it supposes the sheriff not to have delivered actual possession of that part of the lot on which the water was standing ; whereas I consider it an actual possession that was delivered and that the water did not prevent its being so. The judgment in ejectment must certainly be executed ; and if this was not actual possession, on account of water being on the land, it would be impossible, in such a case, to execute a judgment, and the law would have to be acknowledged impotent. The sheriff was not bound to drain the land. To do that deed, he must have entered on the defendant's land and prostrated his dam. He, therefore, gave to the plaintiff the actual possession of the premises, the land and the water both.

An idea seems to be entertained, that if the defendant overflowed the freehold of an owner, higher up the stream, it gave him *possession* of the land he so overflowed, and *ousted* the owner ; but if this can be construed an *ouster*, it follows that an ejectment may lie for overflowing land ; which is not only unheard of, but would be without effect even after a judgment. All he could recover would be the land *with the water on it* : the injury would still be unredressed.

So far from being any ouster, it is not even a *trespass*, to flow the land of another with water by erecting a dam below his land ; for the *act*, in itself, is *lawful*. Every man may build a dam, by common right, on his own land ; and trespass never lies when the act is lawful in itself, and injurious only in its consequences. A man who fixes a spout to carry the water away from his house, performs a lawful act on his own premises ; but if it shed the water upon the roof of his neighbor's house, or into his yard, he must be answerable for the injurious consequences in an action on the case, but an action of *trespass* will not lie against him.—*Reynolds* v. *Clark, Stra.* 634.

It is, therefore, no dispossession, no ouster, nor even a trespass, to flow water backwards on another person's land ; it is denominated in law a *nuisance*, an annoyance *to the tenant in possession ;* and his only modern remedy is, by an action on the case, founded on his possession. It is not in the nature of a nuisance ever to work a dispossession of the tenant, if it be the consequence of a lawful act ; as if one erect a smelting house, or a stye, on his own land, so near to another man's house as that it incommodes his dwelling by the gas of the former, or nauseous smell of the latter, the annoyance is neither an ouster, or dispossession of the owner, nor will an ejectment, or trespass, lie for the injury ; it is a nuisance the remedy for which is only by an action on the case—3 *Bl. Com.* 220.

If such a nuisance, whether by smelting house, hog stye, or raising back water, has been continued in the same manner, peaceably and without interruption, twenty years, it thereby ripens into a right, and then it takes, in law, the name of an *easement*, but even an easement works no dispossession of the owner ; the possession still remains in him as much as if the easement did not exist. Thus if the public have a high way over any man's land, or if an individual have a private way over it, such easements of their's impair not the owner's possession ; he may maintain trespass for digging the soil of such high way, or even private way, which shows the possession is his as much as if such easements were not in existence. Therefore whether it be a nuisance or easement, it does not impair the possession of the owner of the land ; he remains as entirely in the actual possession as if such nuisance or easement were

not in being. Of consequence the direction given to the jury was evidently a mistake. The sheriff delivered to the plaintiff actual possession of the whole premises mentioned in the writ of possession, whether drowned by water or not. If the defendant's dam continued to drown it the nineteen years afterwards, it may have annoyed the plaintiff, but did not diminish his possession. Without touching other points involved in the cause, I am of opinion, on this ground alone, that there ought to be a new trial, and let the costs abide the event of the suit.

RYERSON, J. This is a motion to set aside a verdict rendered for the defendant and grant a new trial in an action on the case for overflowing the plaintiff's land by means of a mill-dam erected below the dam, many years ago, by another person, but kept up and maintained by the defendant. The plaintiff counted on his possession and seizin. The defendant pleaded not guilty. On the trial it appeared that the plaintiff made an appropriation of the land in question, two 79-100 acres, the 20th April, 1808, as of vacant land, by a survey and return thereof, in due form, in the name of Matthew Perrine; that he recovered judgment in an action of ejectment for the same lands, against the person in possession, in September term, 1810, and before November term following, took possession thereof under a writ sued out of this court. It further appeared that the title of Matthew Perrine was duly transferred to the plaintiff; so far, at least, as was necessary to support this action, if that title could enable him to support it. During all this time, and down to the bringing of the present action in the year 1829, a part of the land in question was overflowed in the manner complained of, except at short intervals, and no change had been made in the possession since 1810.

On the part of the defendant, it was insisted that the plaintiff had not the possession or any title to the lands alledged to have been overflowed. It appeared that a prior location, or appropriation of the premises in question, had been made by patent as long ago as 1690. But the title thus acquired was not traced to any person after the year 1700. Nor did the defendant show in himself, or his grantor, any title, or any possession, other than as hereinafter and above specified. That is what resulted from the act of overflowing and a proprietary location.

made in the year 1809, younger than that of the plaintiff, and therefore inoperative, and which was moreover in no manner assigned to the defendant. It also appeared that a negociation had for some time existed between the plaintiff and one Anderson, who held the premises till within a few years, and under whom the defendant claims for a transfer of title of the *locus in quo* to Anderson from the plaintiff, and that Anderson had disclaimed any right to the premises, or to flow the same, as against the plaintiff. And when the defendant purchased he was expressly told by Anderson that he could give him no title for this slip of land ; but that he, the defendant, must purchase the same of the plaintiff.

According to the report made to us of the charge to the jury by the judge who tried the cause, he " seemed to dispose of the written and documentary title of the parties, respectively, without making any account of either, and placed the cause before the jury on the question of the plaintiff's possession and the injury thereto by the defendant." If the jury believed, from the evidence, that the plaintiff was possessed of the premises (which possession must be an actual possession at the time the injury was committed) and that the defendant had done the injury thereto, then they should find for the plaintiff the amount of the damages proved ; if not, they were to find for the defendant."

The application now made to the court is upon the grounds, " that the judge, in his charge, erred in law, and that the verdict was against law and evidence."

I am of opinion that if by " actual possession," in the charge, any thing more was intended and communicated to the jury, than such a possession as the plaintiff *might* have in the *locus in quo*, notwithstanding it was overflowed by another in the manner in this action complained of, and proved, the charge was erroneous in law ; otherwise this action upon a count, upon the possession merely, could never be maintained. And if the charge does not mean more, the verdict of the jury is contrary to the evidence in the cause, which shows that the plaintiff, by his entry, under a proprietary location, and a judgment and writ of possession in ejectment, had all the actual possession of which the *locus in quo* was susceptible, while the nuisance complained of continued. In this point of view, I am inclined to

Perrine *v.* Bergen.

think the written and documentary title of the plaintiff was important, as tending to show the extent and bounds and character of his possession, and ought not to have been laid out of view without making any account thereof. Though upon this point I do not intend to give any conclusive opinion.

I am therefore of opinion, without considering the other matters involved in this case, that the verdict should be set aside, and a new trial granted.

The costs to abide the event of the suit.